IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

CORDERAL SUMMERS,                  )
                                   )
            Plaintiff,             )
                                   )
      v.                           )   CIVIL ACTION NO. 3:15cv789-CSC
                                   )                 (WO)
CAROLYN W. COLVIN,                 )
Acting Commissioner of Social Security,[1]   )
                                   )
            Defendant.             )

## MEMORANDUM OPINION and ORDER

## I. Introduction

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social

Security Act,  42 U.S.C. § 401 et seq., alleging that he was unable to work because of a

disability.  His application was denied at the initial administrative level.  The plaintiff then

requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the

hearing, the ALJ also denied the claim.  The Appeals Council rejected a subsequent request for

review.  The ALJ's decision consequently became the final decision of the Commissioner of

Social Security (Commissioner).[2]  *See  Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g).  Pursuant to 28

U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States

---

[1]  Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.

[2]  Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

Magistrate Judge.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be reversed and this case remanded to the Commissioner for further proceedings.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...

To make this determination[3] the Commissioner employs a five step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

---

[3]   A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[4] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Ingram v. Comm. of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986). The court "may not decide the facts anew, reweigh the evidence, or substitute . . . [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (alteration in original) (quotation marks omitted).

> [The court must, however,] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  The Issues

**A.  Introduction.**  The plaintiff, Corderal Summers ("Summers"), was 23 years old on the alleged date of onset and 25 years old at the time of the administrative hearing. (R. 27, 38). He has a 12th grade education. (R. 27, 40). Summers' prior work experience includes work as a customer service representative. (R. 27). Following the administrative hearing, the ALJ

3

concluded that the plaintiff has the severe impairment of "human immunodeficiency virus (HIV)." (R. 21). Nonetheless, the ALJ concluded that Summers was not disabled because he has the residual functional capacity to perform sedentary work. Using the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P., App. 2, as a framework and relying on the testimony of a vocational expert, the ALJ concluded that there were significant number of jobs in the national economy that Summers could perform including charge account clerk, order clerk, and table worker. (R. 28). Thus, the ALJ concluded that Summers was not disabled. (*Id.*).

**B. The Plaintiff's Claims.** The plaintiff raises five issues for the Court's review. As stated by the plaintiff, the issues are as follows:

I.   The Administrative Law Judge Failed to Appreciate the Severity of Mr. Summers' HIV+ Infection and According to CDC Guidelines, Mr. Summers' Laboratory Reports are Consistent with an AIDS diagnosis.

II.  The Administrative Law Judge Failed to Obtain Medical Expert Testimony Regarding Whether Mr. Summers' Impairment Equaled in Severity Listing 14.08.

III. The Administrative Law Judge Failed in Her Duty to Fully and Fairly Develop the Record.

IV.  The Administrative Law Judge's Residual Functional Capacity Finding is Not Rooted in the Record.

V.   The Administrative Law Judge Erred in Her Evaluation of Mr. Summers' Statements Regarding the Nature and Limiting Effects of His HIV+ Status.

(Doc. # 12 at 1).

These issues are so intertwined that the court will not discuss them separately.

4

## IV.  Discussion

A disability claimant bears the initial burden of demonstrating an inability to return to his past work.  *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990).  In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and his family or friends; and (4) the claimant's age, education, and work history.  *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983).  The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review.  *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981).

This court's ultimate inquiry is whether the Commissioner's disability decision is supported by the proper legal standards and by substantial evidence.  *See Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).  "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits."  *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000).

> The SSA is perhaps the best example of an agency that is not based to a significant extent on the judicial model of decisionmaking.  It has replaced normal adversary procedure with an investigatory model, where it is the duty of the ALJ to investigate the facts and develop the arguments both for and against granting benefits; review by the Appeals Council is similarly broad.  *Id*.  The regulations also make the nature of the SSA proceedings quite clear.  They expressly provide that the SSA "conducts the administrative review process in an informal, nonadversary manner."  20 C.F.R. § 404.900(b).

*Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000).

The ALJ must also state, with sufficient specificity, the reasons for her decision referencing the plaintiff's impairments.

> *Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.*

42 U.S.C. § 405(b)(1) (emphases added).

Summers contends that the ALJ erred because she failed to account for the severity of his HIV condition based on his symptoms and side effects of his medications, including opportunistic infections, pain and diarrhea. The plaintiff also contends that the ALJ failed to consider whether he meets or equals Listing 14.08 and failed to fully and fairly develop the record when she failed to secure medical testimony or evidence from a physician regarding limitations caused by his HIV status and restrictions imposed by the side effects of his medications. Finally, Summers contends that the ALJ's residual functional capacity determination is not based on substantial evidence.

It is undisputed that Summers has HIV. Summers testified that this causes him to experience gastrointestinal pain and diarrhea every day and sometimes as much as three to four times daily. (R. at 41, 43-44, 48-49). The ALJ thought that the plaintiff's activities of daily living did not support his testimony.

> Although Claimant has described daily activities that are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding Claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Second, even if Claimant's daily activities are truly as limited as alleged, it is difficult to attribute

that degree of limitation to Claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, Claimant's reported limited daily activities are considered outweighed by the other factors discussed in this decision.

The medical evidence demonstrates that Claimant's HIV is well controlled and not likely to cause significant functional limitations beyond those imposed by some related joint pain and swelling in the hands and feet and some mild synovitis of the metacarpal phaleangeal joints of the fingers. However, Claimant has been prescribed several medications including Lortab 5 mg and Tramadol for pain, STRIBILD for HIV, and dicyclomine for treatment of symptoms of irritable bowel syndrome (Exhibit 8E). These medications can sometimes cause side effects including lactic acidosis, feeling very weak or tired, unusual (not normal) muscle pain, trouble breathing, drowsiness, stomach pain, nausea, vomiting, dizziness, weakness, and lightheadedness. In combination with limitations imposed by HIV, Claimant's medications could reasonably be expected to cause significant functional limitations limiting him to a range of sedentary work activity as well causing nonexertional limitations, as specified in his residual functional capacity.

I have considered all the evidence of record and the testimony at the hearing. However, the record in its entirety does not contain objective signs and findings that could reasonably be expected to produce the degree and intensity of pain and limitations Claimant alleges. The claimant has presented medical evidence demonstrating that he has impairments that could reasonably be expected to produce some pain and discomfort. I further note that some pain and discomfort while working is not, *per se*, determinative of disability. Mild to moderate pain and discomfort is not, in itself incompatible with the performance of sustained activities. Neither the objective medical evidence, Claimant's statements, nor the testimony discussed above establishes that his ability to function has been so severely eroded as to preclude work activity.

As for the opinion evidence, no medical provider has offered an opinion as to Claimant's functional capabilities.

No restrictions placed on him have been noted in the medical evidentiary record. However, the diagnoses and findings of the practitioners at East Alabama Medical Center and University Wellness Clinic have been of great probative value in identifying Claimant's impairments, the severity thereof, and the impact they could be reasonably expected the (sic) have upon his residual functional capacity.

(R. at 26-27).

The problem with the ALJ's analysis can be succinctly stated.  The ALJ failed to adequately develop the record regarding the limitations imposed on Summers by his HIV status and the side effects of his medications which include diarrhea.  The ALJ concluded that while the medications treating Summers' HIV status could cause side effects including nausea, vomiting and diarrhea, and could cause "significant functional limitations," those side effects only limited him to sedentary work. (R. 26). The ALJ offers no explanation and points to no evidence in the record to support this conclusion. The ALJ discredited Summers' complaints of abdominal pain, nausea and vomiting because Summers only presented to the emergency room complaining one time of those symptoms.  (R. 25).  While it is true that Summers only reported once to the emergency room with complaints of abdominal pain and nausea, he routinely complained about pain, tenderness and nausea. *See* R. 211/233,[5] 214/297, 215-298, 391.

Prior to being placed on medication to treat his HIV, Summers had no complaints of nausea or diarrhea.  (R. 219/339, 220/319/340, 223/322/343, 318).  However, in January 2013, Summers was prescribed Zithromax and Stribild to treat his HIV.  (R. 392).  On February 20, 2013, he complained to his treating physician of diarrhea 4 to 5 times a day.  (R. 211/233).  A common side effect of Zithromax and Stribild is diarrhea.

On October 16, 2013, Summers presented to the East Alabama Medical Center complaining of nausea and vomiting and abdominal pain.  (R. 312).   Nausea is also a side

---

[5]  The slash denotes a duplicate medical record.

8

effect of Stribild.

Generally, an ALJ may consider a person's activities of daily living in making a credibility determination. 20 C.F.R. § 404.1529(c)(3)(i); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1225–26 (11th Cir.2002) (upholding ALJ's decision to discredit claimant's testimony where it was inconsistent with medical evidence and claimant's daily activities). But in this case, there is no congruence between work and daily living with regard to limitations imposed by Summers' frequent diarrhea and nausea. A person who is caring for himself, performing household tasks or shopping for groceries can take frequent, unplanned breaks whenever he wants to. However, as the vocational expert testified in this case, that is not true in a work setting.

> Q:    Assuming, if you would, a finding of credibility as to the claimant's testimony concerning the symptoms of his illness and the resulting need for additional bathroom breaks as well as the additional rest period, would such a worker be able to perform the jobs, or reasonably compete for the jobs you've just listed?

> A:    No, sir, his testimony indicates that he has to have three or four bathroom breaks per day, lasting 10 to 15 minutes apiece, and two or three times a week are going to last longer than that to deal with clothing. And testimony indicates three to four hours per workday of rest and reclining. That in combination is going to prevent him from maintaining an eight-hour day, five days a week, or a 40-hour equivalent.

(R. 54).

Thus, the court is left with this. For the jobs which the ALJ identified as jobs the plaintiff could perform, none of them allow for excessive breaks defined either in terms of frequency or duration. Indeed, Social Security Ruling 96-8p defines an individual's residual

functional capacity as the person's maximum remaining ability "to do sustained work activities in an ordinary work setting on a 'regular and continuing basis' and that a 'regular and continuing basis' means eight hours a day, five days a week, or the equivalent work schedule." The ALJ's residual functional capacity description does not incorporate the limitation of the need for frequent and unplanned interruptions in the work schedule to accommodate Summers' diarrhea and nausea.

To further compound the court's difficulty with review of this case, as shown above, testimony was elicited about the impact of bathroom breaks on the ability of the plaintiff's ability to hold a job,[6] but the ALJ did not discuss this in her opinion. The ALJ did note that side effects from Summers' medications also caused "nonexertional limitations," (R. 26), but she did not describe what those limitations were. The problem with all this is that it is not at all clear what limitations the vocational expert considered in identifying jobs the plaintiff could perform. While as shown above, the vocational expert was asked about "bathroom breaks," the ALJ did not incorporate in her description of limitations any need for frequent, unscheduled breaks. Moreover, in her opinion, the ALJ recognized that Summers' medications could cause side effects including diarrhea and nausea. However, she then failed to address how these side effects would impact Summers' ability to perform work on a sustained basis. Thus, the court has no idea what the ALJ determined with regard to the impact of his medication's side effects of diarrhea and nausea and Summers' need for frequent breaks on his ability to perform work.

---

[6]   The plaintiff also testified that he had been fired from his last job because he took too many bathroom breaks.

The ALJ also noted that no medical provider had "offered an opinion as to Claimant's functional capabilities" as another basis for discrediting the plaintiff. (R. 26). This presents two problems in this case. In most cases, this normative approach to determining credibility is certainly acceptable. However, that approach does not work in this case because what would a doctor say? "Don't get too far from a bathroom." Here, the absence of comments about the plaintiff's physical ability to do work does not support the ALJ's conclusions because the side effect of medications used to treat his HIV impairment - frequent diarrhea - is a non-exertional impairment[7] unrelated to the strength to do a job. "The ALJ must make a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir.1995) (quotation omitted). The ALJ did not make that finding. "[T]he severity of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986); *Gray v. Comm'r of Soc. Sec.*, 426 F. App'x 751, 753 (11th Cir. 2011); *Manzo v. Comm'r of Soc. Sec.*, 408 F. App'x 265, 269 (11th Cir. 2011).

The second problem in this case is the ALJ concluded that Summers' "HIV is well controlled and not likely to cause significant functional limitations imposed beyond those imposed by some related joint pain and swelling in the hands and feet and some mild synovitis

---

[7] Diarrhea is a nonexertional impairment. *See Haynes v. Heckler*, 716 F.2d 483, 485 (8th Cir. 1983) (colon discomfort and recurrent episodes of diarrhea are nonexertional impairments).

in the metacarpal phalangeal joints of the fingers." (R.26). This conclusion is speculative, ignores Summers' nonexertional impairment of diarrhea and substitutes her judgment for that of a medical professional. In this case, the ALJ failed to "discuss meaningfully how [Summers' HIV status] might affect [his] ability to perform" work. *See Barrio v. Comm'r of Soc. Sec. Admin.*, 394 F. App'x 635, 638 (11th Cir. 2010). While it is undisputed that Summers is HIV, it is unclear how this condition *affects* his ability to work. "[W]hen the ALJ fails to 'state with at least some measure of clarity the grounds for [her] decision,' we will decline to affirm 'simply because some rationale might have supported the ALJ's conclusion.' " *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Owens v. Heckler,* 748 F.2d 1511, 1516 (11th Cir.1984) (per curiam)). Without a more developed record and further inquiry, the court concludes that the ALJ erred as a matter of law when she failed to develop the record regarding the effects of Summers' HIV status on his ability to perform work.

Moreover, there is sufficient evidence in the record from which the ALJ should have concluded that it was necessary to secure additional medical evidence regarding Summers' HIV status before rendering a decision regarding his disability. The ALJ failed to order *any* consultative examination for Summers. As noted, no medical professional offered *any* opinion on Summers' ability to perform work. The ALJ also did not require any updated blood work or medical testing to determine the extent or effects of his HIV condition on his ability to work. She took no action to ascertain how this impairment might impact Summers' ability to perform work. *See Holladay v. Bowen,* 848 F.2d 1206, 1209 (11th Cir. 1988) (ALJ is not required to order consultative examination unless the record establishes that such an evaluation is necessary

to make informed decision); *Reeves v. Heckler*, 734 F.2d 519 (11th Cir. 1984) (error for ALJ not to order consultative examination where the evaluation is needed to make an informed decision). "Failure to apply correct legal standards or to provide the reviewing court with the sufficient basis to determine that the correct legal principles have been followed is grounds for reversal." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

Pursuant to 20 C.F.R. § 416.917, the ALJ is required to order additional medical tests when the claimant's medical sources do not give sufficient medical evidence to make a determination as to disability. The ALJ acknowledged that there were *no* medical opinions in the record regarding Summers' limitations, but she then failed to order a consultative evaluation or any additional medical testing. (R. 26-27). The ALJ's failure to fully develop the record requires that this case be remanded for further proceedings because the ALJ could not make an informed decision based on the record before her. Thus, her decision is not supported by substantial evidence. On remand, to make a full and fair determination of Summers' disability claim, the ALJ shall secure a consultative evaluation from a physician who is qualified to determine the extent and effects of Summers' HIV impairment and the corresponding side effects of his medications on his ability to perform work. The ALJ should also consider whether expert medical testimony is necessary to determine whether Summers meets or equals Listing 14.08, generally or Listing 14.08K specifically.

In short, the ALJ failed to fully develop the record with regard to the impact of the plaintiff's diarrhea on his ability to perform work and failed to develop the record regarding the limitations imposed on the plaintiff due to his HIV condition. This case will be remanded to

the Commissioner for further proceedings consistent with this opinion.

A separate final judgment will be entered.

It is further

ORDERED that, in accordance with *Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1278 fn. 2 (11th Cir. 2006), the plaintiff shall have sixty (60) days after she receives notice of any amount of past due benefits awarded to seek attorney's fees under 42 U.S.C. § 406(b).  *See also Blitch v. Astrue*, 261 F. App'x 241, 242 fn.1 (11th Cir. 2008).

Done this 11th day of January, 2017.

        /s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

14